UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JEFF POTTER,

    Plaintiff,

v.

FRUITPORT TOWNSHIP POLICE
DEPARTMENT, and
OFFICER JOSHUA WISE, and
SERGEANT DANIEL BABINEC,
in both their individual and official
capacities,

    Defendants.

File No. 1:20-CV-1020

Hon.

---

# COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. This is an action to remedy violations of the Fourth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983, arising out of Defendants' unlawful search and seizure of Plaintiff Jeff Potter's home and person.

### JURISDICTION AND VENUE

2. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks redress for the deprivation of rights secured by the U.S. Constitution. Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983.

3. Plaintiff Jeff Potter is a resident of Muskegon County, in the Western District of Michigan.

1

4. Defendant Fruitport Township Police Department (FPD) is a municipal law enforcement agency charged with providing law enforcement services to the community of Fruitport, Michigan in the Western District of Michigan.

5. FPD is responsible for appropriately training and supervising its officers, employees, and agents regarding interactions with citizens generally and with Fourth Amendment protections as they relate to law enforcement activities specifically.

6. Defendant Officer Joshua Wise is a Patrol Officer working for FPD. Upon information and belief, he lives in the Western District of Michigan.

7. Defendant Sergeant Daniel Babinec is a Sergeant with the FPD. Upon information and belief, he lives in the Western District of Michigan.

8. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9. On December 9, 2019, at approximately 1:58 PM, Defendant Officer Joshua Wise went to Plaintiff's home at 3690 Dangl Road in Fruitport Township in an attempt to serve a subpoena on Plaintiff's brother, Richard (Rick) Potter.

10. The subpoena named Rick Potter and listed his home address of 225 Douglas Street, Fruitport, Michigan.

11. Officer Wise first attempted to serve the subpoena on Rick at his home on Douglas Street, but found no one there.

12. Officer Wise was aware Rick sometimes stayed with Plaintiff at Plaintiff's home in Fruitport Township.

13. Upon arrival at Plaintiff's home on December 9, Officer Wise observed Rick Potter's vehicle in the driveway and saw that there were lights on in Plaintiff's home.

14. Officer Wise also knew there was an arrest warrant for Rick Potter related to the same matter as the subpoena he was attempting to serve, but upon information and belief, he only had the subpoena with him when he arrived at Plaintiff's home.

15. Officer Wise knocked on the door, and Plaintiff's wife, Miyuki Potter, answered the door of the home.

16. Officer Wise asked to speak with Rick Potter. Mrs. Potter said, "Rick?" Officer Wise said, "Yeah," and Mrs. Potter replied, "Hang on." She then proceeded to go back into the house, leaving Officer Wise outside of the house on the porch.

17. Plaintiff came to the door and told Officer Wise, "I'm not Rick, I'm his brother," and he asked Officer Wise about the purpose of his visit.

18. Officer Wise informed Plaintiff that he had a subpoena for Rick Potter, but when Plaintiff asked Officer Wise for more details regarding the subpoena, he did not answer.

19. Plaintiff then said, "I'm his brother. This is my property. He's here. He's here."

20. Officer Wise then told Plaintiff, "I legally would be justified in breaking the door down to get Rick" and cited Michigan Compiled Laws § 764.21 to Plaintiff. Upon information and belief, Officer Wise was attempting to elicit Plaintiff's consent for Officer Wise to enter Plaintiff's home, and/or for Plaintiff to bring Rick Potter to Officer Wise's custody outside of the home.

21. However, Plaintiff refused to give Officer Wise consent to enter his home, and instead Plaintiff simply said, "Do what you gotta do."

22. Officer Wise then advised Plaintiff that if Plaintiff did not allow Officer Wise inside to make contact with Rick, i.e., if Plaintiff did not provide a statement of affirmative consent for Office Wise to enter Plaintiff's home, Officer Wise would arrest Plaintiff for harboring a misdemeanant.

23. Up to this point, Officer Wise knew, but did not inform Plaintiff, that a Court had also issued an arrest warrant for Rick. Officer Wise only told Plaintiff he was there to serve a subpoena.

24. At some point in their encounter, and after his first threat to arrest Plaintiff, Officer Wise did tell Plaintiff that he had an arrest warrant for his brother Rick, but Officer Wise did not show Plaintiff an arrest warrant for Rick Potter.

25. Indeed, several times during the interaction with Officer Wise after Officer Wise told Plaintiff that there was an arrest warrant for Rick Potter, Plaintiff then asked to review the arrest warrant or for Officer Wise to read it to him.

26. Officer Wise refused to show Plaintiff the arrest warrant, and so Plaintiff continued to refuse to allow Officer Wise to enter his home.

27. When Plaintiff continued to demand to see an arrest warrant before allowing Officer Wise into his home, Officer Wise called Defendant Sergeant Daniel Babinec for backup.

28. Plaintiff then attempted to go back inside his house, but Officer Wise grabbed the door and told Plaintiff that he was under arrest for harboring a misdemeanant. Officer Wise ordered Plaintiff to turn around so he could arrest Plaintiff by placing him in handcuffs.

29. Plaintiff complied with Officer Wise's demand, and Plaintiff turned around and offered his wrists. He explained to Officer Wise that he was not consenting to entry into his home, because he still had not seen the arrest warrant.

30. Shortly after Officer Wise handcuffed Plaintiff, Sergeant Babinec arrived at Plaintiff's home.

31. Plaintiff repeated that Officer Wise had not shown him or read to him an arrest warrant, and Sgt. Babinec made a statement to Plaintiff to the effect that Officer Wise did not need to read the warrant to him.

32. At no point during his interaction with Defendants, even when Plaintiff was arrested, did Defendants read Plaintiff his *Miranda* rights.

33. Following his arrest for refusing to consent to a search of his home without a search warrant, Defendants transported Plaintiff to Muskegon County Jail, where Plaintiff was held in custody for approximately 30 hours until he was brought before a judge for an initial appearance on a criminal charge.

34. Upon arrival at the jail, Defendant Wise told the officers at the jail that Plaintiff was "one of those guys," which Plaintiff understood to be a derogatory characterization meant to prompt poor treatment of him while in jail.

35. During his time in custody, Plaintiff did not have access to food or clean water for approximately 16 hours.

36. During his time in custody, Plaintiff was suffering from a medical condition which was causing him pain and discomfort, making his time in custody particularly physically uncomfortable.

37. Defendants requested that the Muskegon County Prosecutor charge Plaintiff with the crime of Resisting and Obstructing Arrest, and the Prosecutor filed such a charge against Plaintiff.

38. The state district court released Plaintiff from custody on bond on December 12, 2019.

39. Plaintiff hired and paid a criminal defense attorney to defend him on the charge of Resisting and Obstructing Arrest.

40. Plaintiff's defense attorney filed a motion to dismiss the case against Plaintiff on January 6, 2020.

41. A state district court judge dismissed the charge against Plaintiff on February 13, 2020 upon motion to dismiss by the prosecutor. The prosecutor cited the reason of "further investigation" in requesting that the case be dismissed against Plaintiff.

42. As a result of the arrest and jail time, Plaintiff missed approximately four days of work and suffered damage to his professional reputation. Plaintiff works as a licensed builder and thus his professional reputation is crucial to obtaining clients and work contracts.

43. Plaintiff believes he is in danger of losing his builder's license because of the unlawful arrest.

44. As an additional result of the arrest, jail time, and Defendants' actions, Plaintiff suffered other damages, not limited to but including harm to his relationship with his brother and other family members. When Defendants eventually arrested Plaintiff's brother, they maliciously and erroneously caused Plaintiff's brother to believe that Plaintiff made his brother's situation with authorities worse when Plaintiff exercised his Constitutional rights and would not acquiesce to Defendants' unlawful demands.

45. The Fourth Amendment to the Constitution of the United States holds that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. Amend. IX.

46. The right to be free of an unreasonable search and seizure is a "clearly established right[] of which a reasonable official would know." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). "It is well established that a

warrantless search and seizure is unreasonable absent probable cause and exigent circumstances." *Id.*

47. State law, specifically Michigan Compiled Laws § 764.21, allows a police officer who is making an arrest **with a warrant** to break down an inner or outer door of a building in which (1) the person to be arrested is located or is reasonably believed to be located, (2) after announcing his or her purpose, and (3) he or she is denied admittance.

48. In *Steagald v. United States*, the Supreme Court of the United States held that a law enforcement officer must have a search warrant in order to search for the subject of an arrest warrant in the home of a third party, absent exigent circumstances or consent. 451 U.S. 204, 205-206 (1981).

49. As trained law enforcement officers or "reasonable officials," Plaintiff's clearly established Fourth Amendment right against illegal search and seizure were known or should have been known to Defendants Officer Wise and Sgt. Babinec.

50. Defendants' actions in threatening and then arresting Plaintiff when he lawfully refused to consent to entry into his home without first seeing an arrest or search warrant was a clear violation of Plaintiff's established constitutional rights.

### COUNT I: UNLAWFUL SEARCH IN VIOLATION OF THE FOURTH AMENDMENT (PER 42 U.S.C. §1983)

51. Plaintiff incorporates the allegations in all prior paragraphs as if restated herein.

52. Defendant FPD is responsible for the training and supervision of its law enforcement officers, including training on clearly established rights which any reasonable official should know.

53. No reasonably trained or experienced law enforcement officer in the State of Michigan would believe that it is lawful to command entry into a citizen's home without presenting a search or arrest warrant, absent exigent circumstances or consent.

54. No reasonably trained or experienced law enforcement officer in the State of Michigan would fail to obtain a magistrate's approval before entering a third-party's home to execute a search warrant absent exigent circumstances.

55. FPD failed to provide appropriate training to Defendants Wise and Babinec.

56. The actions of Defendants in knowingly violating the clearly established Constitutional rights of Plaintiff were willful and malicious.

57. Defendants entered Plaintiff's home without his consent and arrested Plaintiff in retaliation for him asserting his Fourth Amendment rights by demanding to see an arrest or search warrant prior to admitting the officers into his home.

58. The conduct of all Defendants entitles Plaintiff to exemplary or punitive damages, in addition to compensatory damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A. Award Plaintiff money damages in an amount sufficient to compensate him for expenses incurred and to be incurred as the result of Defendants' unlawful actions;

B. Award compensatory damages for mental anguish, pain and suffering, costs of defending a baseless criminal charge, and emotional distress;

C. Award Plaintiff all available punitive and other exemplary damages available;

D. Award Plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988;

E. Grant such other relief as the Court finds just and proper.

## COUNT II: UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT (PER 42 U.S.C. §1983) – UNLAWFUL ARREST

59. Plaintiff incorporates the allegations in all prior paragraphs as if restated herein.

60. Defendant FPD is responsible for the training and supervision of its law enforcement officers, including training on clearly established rights which any reasonable official should know.

61. FPD failed to provide appropriate training to Defendants Wise and Babinec.

62. Defendants arrested Plaintiff in retaliation for him asserting his Fourth Amendment rights by demanding to see an arrest or search warrant prior to admitting the officers into his home.

63. Defendants illegally seized Plaintiff's person and caused him to be unlawfully held at Muskegon County Jail for 30 hours as part of an unlawful arrest.

64. The conduct of all Defendants entitles Plaintiff to exemplary or punitive damages, in addition to compensatory damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A. Award Plaintiff money damages in an amount sufficient to compensate him for expenses incurred and to be incurred as the result of Defendants' unlawful actions;

B. Award compensatory damages for mental anguish, pain and suffering, costs of defending a baseless criminal charge, and emotional distress;

C. Award Plaintiff all available punitive and other exemplary damages available;

D. Award Plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988;

E. Grant such other relief as the Court finds just and proper.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff

Dated: October 26, 2020         By:   /s/ Sarah R. Howard
                                      Sarah Riley Howard
                                      Erin L. Dornbos
                                      146 Monroe Center, N.W., Suite 805
                                      Grand Rapids, MI 49503
                                      (616) 451-8496
                                      showard@psfklaw.com

## JURY DEMAND

To the extent jury trial is allowed with regard to any of the issues herein, Plaintiff demands same.

Dated: October 26, 2020        PINSKY, SMITH, FAYETTE & KENNEDY, LLP
                                                     Attorneys for Plaintiff

                                             By:   /s/ Sarah R. Howard
                                                        Sarah Riley Howard
                                                         Erin L. Dornbos
                                                        146 Monroe Center, N.W., Suite 805
                                                        Grand Rapids, MI 49503
                                                        (616) 451-8496
                                                        showard@psfklaw.com